**John R. CARLSON and Eleanor C. Carlson, his wife**

v.

**The UNITED STATES.**

**No. 308–75.**

United States Court of Claims.

May 18, 1977.

Stimson Bullitt, Seattle, Wash., attorney of record, for plaintiffs.

C. David Redmon, Washington, D. C., with whom was Asst. Atty. Gen. Peter R. Taft, Washington, D. C., for defendant.

Before DAVIS, Judge, SKELTON, Senior Judge, and BENNETT, Judge.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BENNETT, Judge:

This taking case, before the court on defendant's motion for summary judgment, involves a long-standing problem which Congress addressed in legislation only 5 years ago, although its solution did not go far enough to rescue the present plaintiffs from their predicament. This historic difficulty is the dilemma of the real property owner whose landholding neighbor is the United States: he generally cannot obtain specific judicial relief when the boundary between his and his sovereign neighbor's land is in dispute, for his neighbor is cloaked with immunity from suit. *Malone v. Bowdoin,* 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962); *Carlson v. Tulalip Tribes of Wash.,* 510 F.2d 1337 (9th Cir. 1975); *County of Bonner, Idaho v. Anderson,* 439 F.2d 764 (9th Cir. 1971); Steadman, *Land Title Disputes With the Sovereign,* 1972 Duke L.J. 15. Congress largely alleviated this problem by waiving sovereign immunity in most quiet title actions, through the Act of Oct. 25, 1972, Pub.L. 92–562, § 3(a), 86 Stat. 1176, now codified as 28

U.S.C. § 2409a (Supp. V, 1975). However, excepted from this waiver were "trust or restricted Indian lands" held by the United States. 28 U.S.C. § 2409a(a); *Carlson v. Tulalip Tribes of Wash., supra.* Plaintiffs' land at issue in this action borders an Indian reservation, title to which is vested in the United States as trustee, and their dispute with the Indians, and the Government here, is over where the reservation ends and their property begins. Thus, any attempt on plaintiffs' part to obtain specific relief on their land title claim necessarily runs afoul of the statutory exception and they are left without the redress of a quiet title action.

The foregoing in fact did happen to plaintiffs. They brought an action against their federally incorporated Indian neighbor, the Tulalip Tribes of Washington (the tribe), in the United States District Court for the Western District of Washington, claiming that they were the owners in fee simple of a tract of low-lying, alluvial land in Snohomish County, Washington, which during the period described in the petition (1962–75) was unimproved, unoccupied, and (except for a sale agreement in part of the period) unencumbered. The tract, the disputed part of which borders the Tulalip Reservation, was conveyed to plaintiffs in 1962 under a referee's deed, resulting from their purchase at a sale following a partition suit and decree in the state court under 25 U.S.C. § 403a–1 (1970).[1] The controversy in the district court and here revolves about the partition decree and the referee's deed, that is to say, plaintiffs and the tribe cannot agree on exactly what it was that plaintiffs purchased in 1962. Plaintiffs told the district court that the tribe, by letter of counsel dated July 16, 1969, asserted to plaintiffs the tribe's ownership of that part of their tract consisting of tidelands contiguous to the reservation. The tribe maintained that an earlier survey, determining the line of the tidelands, had understated the extent of the tidelands of which the tribe was holder. According to plaintiffs, the tribe's claim clouded their title to the

tract and made it unmarketable, for they could not obtain the title insurance necessary to carry out their agreement in 1966 to sell the tract to their co-plaintiff in that suit, a limited partnership named Shorewood Park.

Plaintiffs did not manage to get their title cleared in that action, however, for the district court on July 16, 1973, dismissed the suit with prejudice, before reaching the merits, on the ground that a party necessary to the adjudication had not been and could not be joined. Fed.R.Civ.P. 19(a) and (b). The dismissal resulted from the tribe's motion to require plaintiffs to join the reservation's legal titleholder, the United States, as a necessary party, or else suffer the consequence of dismissal. Of course, the United States enjoyed immunity from such suit, as mentioned above, leading the district court to conclude that the suit could not be maintained. The Court of Appeals for the Ninth Circuit affirmed, on February 3, 1975, noting that "[b]ecause the United States has refused to be joined as a party, the litigation could not properly proceed." *Carlson v. Tulalip Tribes of Wash., supra,* 510 F.2d at 1339. The court of appeals reasoned that the Government was a necessary party in that "[b]ecause the United States has fee title to unallotted Reservation lands, the dispute involves the fixing of a boundary between lands of the United States and the lands claimed by the plaintiffs." *Id.*

Plaintiffs next filed suit here on August 18, 1975, having been barred from specific relief, asking money damages from the Government for an uncompensated taking of property under the fifth amendment. Plaintiffs in essence now complain that the cloud cast upon their title by the tribe's claim, coupled with the Government's immunity to suit for specific relief, have effected an inverse condemnation of their interest in the disputed tract, again because the cloud which they could not judicially remove impaired the land's merchantability.

---

1. Plaintiffs sold a portion of the tract in 1975, and such is not in issue here. What supposedly remained in their hands after that sale is the subject of contention.

This presents an issue of first impression under the law of inverse condemnation. Defendant concedes the existence of the cloud, and even that plaintiffs may have been injured thereby, but denies liability on the grounds that sovereign immunity cannot in itself give rise to a taking of property, that there was no authority for any taking here, that the admitted lack of any invasion, possession or use of the disputed tract by the Government belies the claim of taking, and that in any event the statute of limitations has run on plaintiffs' action in this court.[2] Since no facts are controverted which are material to the resolution of this case on defendant's motion for summary judgment, we proceed to decide it.[3]

██ Plaintiffs' contention that their inability to sue the Government in order to clear their title gives rise to a taking of property, at least when viewed in light of the tribe's claim casting a cloud on their title, is simply without support in the case law. Plaintiffs cite us no cases, for indeed there are none, which hold that the sovereign immunity of the United States, without any further action or omission by the Government or its authorized agent, creates in them a right to damages under the fifth amendment. The sovereign's refusal to be sued,[4] by virtue of Congress' declination to alter the common law with respect to governmental immunity from legal process, 1 Blackstone, Commentaries *242, 246, can amount to no more than a limitation on remedies, and cannot extend to give rise to a taking for which the Constitution pledges just compensation. Prior to the establishment of this court, the Government was not of right amenable to suit either for specific relief or for taking damages. Enactment of the Tucker Act, 28 U.S.C. § 1491 (1970), while providing a basis for monetary relief from inverse condemnations, *United States v. Causby,* 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946), did not change the sovereign's liability to process in an action for specific relief. By the same token, it did not make the Government liable in damages for the fact of this immunity. Plaintiffs' complaint on this score is only that Congress has failed to accord them an avenue of judicial relief similar to that available to them as against private individuals. Though the fact complained of is true, and regrettable, it is not a basis for fifth amendment relief, and thus plaintiffs' claim must fail.

In a related contention, plaintiffs emphasize that the United States has the right, as the sovereign and as the trustee of Indian lands, to initiate suit or to intervene in order to quiet title to land in which it claims an interest. *See* 28 U.S.C. § 1345 (1970). Plaintiffs gather from this that the Government could have taken some action to prevent their quiet title suit from being

---

**2.** Though the defense of limitations, *see* 28 U.S.C. § 2501 (1970), is usually the threshold issue for determination, we decline to decide the matter here. The reason for this omission is that a decision on the point would entail a rather lengthy exploration of the sovereign immunity issue in the case, requiring us to rule on certain questions, otherwise dispositive of the case, in the course of reaching a disposition on the limitations contentions.

**3.** Defendant earlier moved to dismiss for failure to state a claim, which motion was denied without prejudice. *Carlson v. United States,* 208 Ct.Cl. 1022 (1976). Since then defendant has answered the petition, and the parties have engaged in discovery, leading to the present motion.

**4.** Considerable argument has arisen between the parties over the district court's and court of appeals' assertions that the Government "refused" to be sued. Plaintiffs point to the courts' language and to the inaction of the congressional delegation from the State of Washington (despite requests from plaintiffs' attorneys that special private bills be introduced allowing the quiet title suit to proceed) to establish that the United States affirmatively declined to submit to the district court's process. Defendant, on the other hand, notes that no agent of the Government—including officials of the Interior Department—was approached regarding the sovereign's participation in the resolution of plaintiffs' land title dispute with the tribe. Further, it cites plaintiffs' answers to defendant's interrogatories in support of its assertion. In view of our disposition of this case, we see no need to resolve this disagreement. By reference to "refusal to be sued" in this opinion, we mean only to speak of the absence of any statute waiving the Government's immunity to suit.

dismissed, or otherwise to help them resolve the validity and extent of their title in the disputed tract. But because the Government did nothing in this regard, say plaintiffs, and stood idly by as the cloud cast upon their title refused to go away, a deprivation of their property rights was effected with the Government's blessing. We must also deny plaintiffs' allegation that these facts state a claim redressable in damages under the Constitution, for this contention is really no different from the one just disposed of. To the extent that the Government is immune from suit, it has the right to stand on that immunity, without being answerable in damages for so doing. Nothing in the law will imply a taking when the Government, otherwise immune from suit over its title to property, declines to exercise its discretionary right to place its own property interests at issue in a court of law,[5] along with those of adverse claimants.

■ With our rejection of the Government's reliance on its immunity as a possible action resulting in a taking, there remains the other action giving plaintiffs great consternation—the tribe's assertion of ownership over the tract, which after all was the catalyst of the cloud and the quiet title action. It might be hypothesized, as those viewing plaintiffs' title as clouded seem to think, that the tribe's claim is itself of some effect, perhaps leading to the conclusion that the claim amounts to a taking. Of course, it does not do so, for the tribe had no authority to claim any land in behalf of the United States. "The first element in establishing a taking consists of showing that the governmental agent's act which is said to amount to an inverse condemnation was within the scope of the agent's authority. Absent such a showing, there can only be a tortious trespass, for which the fifth amendment does not require compensation by the sovereign." *Coast Indian Community v. United States,* Ct.Cl., 550 F.2d 639, 649

(1977). The Tulalip tribal community is a ward of the United States, deemed by the law not to be competent in administering its affairs with regard to the reservation land. If the tribe could, in contemplation of the law, effectively assert and preserve its property rights, there would be no need for its status as a ward, and no need to charge the Government, as this court has often done in the cases of other Indian communities, with a fiduciary responsibility to the tribe. For this very reason, the tribe's claim that rights belonging to their trustee exist within plaintiffs' supposed property lines can have no effect on plaintiffs.

If anyone is to assert legal rights in property adverse to plaintiffs, this must be the opposing legal titleholder, here the United States, and not one incompetent in the eyes of the law to make such assertions. The tribe may only assert its beneficial rights to tribal lands, and then only against the trustee, the United States. Defendant specifically disavows that the tribe or its counsel had any authority to speak for it in claiming reservation boundaries. No authority has been shown to exist, in these or in any other persons or entities claiming rights in the disputed tract adverse to plaintiffs, to assert ownership of plaintiffs' tract or any part of it by the United States. There has been no showing or allegation that the tribe's claim was ratified by anyone authorized to act for the Government. Nowhere, in its answer or in other papers in the case, has defendant asserted title to or an interest in the land in controversy.[6] *Cf. Bourgeois v. United States,* 545 F.2d 727, 731 n. 4, 212 Ct.Cl. ——, —— n. 4 (1976). If the Government could be held liable for the unauthorized acts of its Indian wards in claiming ownership of lands held by others, and would be thereby forced to pay compensation simply because its wards made a claim or because it did not intervene to disown their actions, there is no limit to

---

**5.** A litigant is said to be a "person about to give up his skin for the hope of retaining his bones." A. Bierce, The Enlarged Devil's Dictionary (Doubleday, 1967).

**6.** We therefore deem inapplicable the suggestion in *Malone v. Bowdoin,* 369 U.S. 643, 647 n. 8, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962), that relief would be available in this court.

what the Government might become obligated to pay. For want of any authority in the tribe or other "agents" claiming an interest in plaintiffs' lands, or of any ratification of unauthorized claims made by such parties, no recovery will lie in plaintiffs' favor on a taking theory. *Edison Sault Elec. Co. v. United States,* Ct.Cl., 552 F.2d 326 (1977).

In sum, we hold that the facts of this case show no taking entitling plaintiffs to just compensation. It seems to us that the fair way to resolve plaintiffs' problem with its title—to the extent that our holding above, on the effect of the tribe's assertion of title, leaves the matter still in doubt—is for the Government to assert a legal claim on behalf of the tribe to the disputed land, in this manner settling the controversy once and for all, and giving plaintiffs the deserved opportunity to vindicate the rights which they think they possess.[7] We cannot compel it to do so, but a great nation owes its citizens no less under the circumstances present. *See County of Bonner, Idaho v. Anderson, supra.*

Upon the briefs and motion, without oral argument, we grant defendant's motion for summary judgment. The petition is dismissed.

---

7. Footnote 4 to defendant's opening brief suggests that the bringing of such a suit by the Government is under consideration, though as yet undetermined.