Lawrence I. KASDON

v.

G. W. ZIERDEN LANDSCAPING,
INC., et al.

PRINCE GEORGE'S COUNTY,
MARYLAND, etc.

v.

POTOMAC IRON WORKS, INC., etc.,
et al.

PRINCE GEORGE'S COUNTY,
MARYLAND, etc.

v.

MID–ATLANTIC CONSTRUCTION &
DEVELOPMENT CORP., etc., et al.

Civ. Nos. K–80–149, K–80–1062
and K–80–1795.

United States District Court,
D. Maryland.

March 29, 1982.

Y. Hillel Abrams, Silver Spring, Md., for plaintiff Lawrence I. Kasdon.

Robert B. Ostrom, County Atty. for Prince George's County, Md., Carl A. Harris, Deputy County Atty. for Prince George's County, Md., Barbara J. Lampe, Michael H. Bereston and Michael P. De-George, Associate County Attys. for Prince George's County, Md., Upper Marlboro, Md., for Prince George's County, et al.

Garland C. Tanks, S. Martin Teel, Jr., and Paige E. Reffe, Trial Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., and Paul R. Kramer, Deputy U. S. Atty., D. Md., Baltimore, Md., for defendant, U. S.

FRANK A. KAUFMAN, Chief Judge.

Each of these cases involves a parcel of property in Prince George's County, Maryland ("County") upon which the United States holds one or more tax liens. Each plaintiff bought the property in question at a tax sale conducted by the County on May 8, 1978. Thereafter, each plaintiff brought suit in the Circuit Court for Prince George's County pursuant to Md.Ann.Code Art. 81, § 100(a),[1] to foreclose all equities of redemption in the properties, naming as defendants all persons, including the United States, shown by the County records as claiming any interest in the property in question. The United States removed all three actions to this Court pursuant to 28 U.S.C. §§ 1441, 1444. In a prior opinion filed in two of these cases, this Court held that those removals were appropriately and properly accomplished. *Kasdon v. G. W. Zierden Landscaping, Inc.*, 512 F.Supp. 172 (D.Md.1981). After said prior opinion was filed, these cases were consolidated for all purposes pursuant to Federal Civil Rule 42(a). Presently pending in each case is a motion of the United States to dismiss the complaint as to itself on the ground that it has not waived its sovereign immunity.

The sovereign immunity issue present herein turns upon whether 28 U.S.C. § 2410(a) is applicable. By that statute, the United States has consented to be sued in certain actions affecting property on

---

1. That Maryland statute provides in relevant part:

(a) A holder of any certificate of sale, his heirs or assigns, may at any time after the expiration of one year and a day from the date of sale in any of the counties, or after six months from the date of sale in Baltimore City, file a bill in equity to foreclose all rights of redemption of the property to which such certificate relates, as hereinafter provided. The right to redeem shall, nevertheless, exist and continue until finally barred by decree of the court of equity in which the foreclosure proceeding is filed. Unless a proceeding to foreclose the right of redemption is filed within two years of the date of the certificate of sale, the said certificate shall be void and any and all right, title and interest of the holder of the certificate of sale of [or] his predecessors thereof, in and to the property sold shall cease and all money received by the collector on account of the said sale shall be deemed forfeited, and shall be applied by the collector on the taxes in arrears on said property. . . .

which it asserts a lien. The statute, in pertinent part, provides:

> (a) ... [T]he United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—
>
>> (1) to quiet title to, [or]
>>
>> (2) to foreclose a mortgage or other lien upon,
>>
>> . . . .
>
> real or personal property on which the United States has or claims a mortgage or other lien.

28 U.S.C. § 2410(c) provides, with respect to § 2410(a)(2). as follows:

> However, an action to foreclose a mortgage or other lien, naming the United States as a party under this section, must seek judicial sale.

Plaintiffs[2] contend that these actions are both quiet title actions and foreclosure actions and that viewed as the latter the tax sale at which the properties in question were purchased is the judicial sale required by 28 U.S.C. § 2410(c). Therefore, say plaintiffs, both of subsections (a)(1) and (a)(2) of 28 U.S.C. § 2410 are applicable and thus the United States has waived its sovereign immunity. Accordingly, plaintiffs further say that they may proceed under Md. Ann.Code Art. 81, § 100(a)[3] to foreclose all interests of defendants, including those of the United States as tax lienor. Additionally, plaintiffs assert that if the United States may assert sovereign immunity herein and thus deny to plaintiffs the opportunity under Section 100(a) to foreclose the tax liens of the United States, such denials amount to unconstitutional takings of the properties in question. The United States, in response, contends that plaintiffs have instituted, in terms of 28 U.S.C. § 2410(a), foreclosure actions and not quiet title actions, that no "judicial sale" within the meaning of 28 U.S.C. § 2410(a)(2) and (c) has taken place, that therefore the United States has not waived sovereign immunity and that the existence of such immunity has not caused any unconstitutional taking.

### Choice of Law

■ At the outset, there is presented a choice of law issue. In *Aqua Bar & Lounge, Inc. v. United States*, 539 F.2d 935, 938 (3d Cir. 1976), a quiet title action brought under § 2410, Chief Judge Seitz concluded: "Although suits to quiet title have traditionally involved real property, this particular action is governed by federal rather than state law." Earlier, in *United States v. Brosnan*, 363 U.S. 237, 241–2, 80 S.Ct. 1108, 1111, 4 L.Ed.2d 1192 (1960), Justice Harlan had written:

> We ... believe it desirable to adopt as federal law state law governing divestiture of federal tax liens, except to the extent that Congress may have entered the field. It is true that such liens form part of the machinery for the collection of federal taxes, the objective of which is "uniformity, as far as may be." [citation omitted]. However, when Congress resorted to the use of liens, it came into an area of complex property relationships long since settled and regulated by state law. We believe that, so far as this Court is concerned, the need for uniformity in this instance is outweighed by the severe dislocation to local property relationships which would result from our disregarding state procedures.

Judge Harlan's approach evidenced a general federal policy to rely on state law, when not inconsistent with federal law, as Judge Seitz recognized in *Aqua Bar*. However, Congress, when it enacted the Federal Tax Lien Act of 1966, 26 U.S.C. §§ 6321–6326, provided that *federal* procedures should govern the divestiture of federal tax liens. While the passage of that legislation does not compel the conclusion that state law

---

**2.** The arguments of plaintiff Kasdon in K–80–149 are joined in by Prince George's County, Maryland as one of the defendants in that case. The County itself is the plaintiff in K–80–1062 and in K–80–1795. The term "plaintiffs" as used in this opinion includes the County in its defendant role in K–80–149 as well as in its plaintiff role in the other two cases.

**3.** See footnote 1, *supra*.

doctrines have no effect in cases such as these, the 1966 legislative action does seemingly limit the application of Justice Harlan's views as expressed in *Brosnan.* In essence, it would seem that federal law controls the construction of § 2410, but that state law retains some persuasive value as a guide to the determination of federal law. Fortunately, those fine line distinctions are not, in these cases, too troubling, as the discussion *infra* indicates, since federal and state law would seem to require the same results herein.

### Quiet Title Actions

■ Plaintiffs concede that they do not have actual or constructive possession of the properties in question. Usually, a plaintiff bringing a quiet title action must have possession of the property which is the subject of the action. 74 C.J.S., *Quieting Title* § 27 at 53 (1951). Few jurisdictions disagree with that general proposition. Md. Real Prop.Code Ann. § 14–108 provides that a quiet title action may be maintained by

[a]ny person in actual peaceable possession of property, or, if the property is vacant and unoccupied, in constructive peaceable possession of it . . . .

In *Wood v. Phillips,* 50 F.2d 714 (4th Cir. 1931), a pre-*Erie*[4] case in which the Fourth Circuit was formulating federal law, Judge Parker concluded (at 716):

A federal court of equity will not entertain a bill to quiet title by a plaintiff not in possession against a defendant in possession not only because such plaintiff has a plain, adequate and complete remedy at law in an action of ejectment, but also because defendant has the constitutional right to have the issue of title tried by a jury.

■ This Court knows of no case involving 28 U.S.C. § 2410 in which the question has arisen as to whether a plaintiff may seek to quiet title thereunder if he lacks actual and constructive possession. However, in the face of near-unanimous judicial authority requiring a quiet title ac-

tion to be brought by a plaintiff-in-possession, it is unlikely that the Congress intended, when it passed § 2410, to permit a quiet title action by a plaintiff who was not in possession, actual or constructive. It is true that very broad construction has been given to the quiet title provisions of § 2410. Thus, in *United States v. Coson,* 286 F.2d 453, 457 (9th Cir. 1961), the Court wrote:

It is plain that the words "quiet title" used in subdivision (a) in that section are not intended to refer to a suit to quiet title in the limited sense in which that term is sometimes used, (see the discussion in *Hopkins v. Walker,* . . . [244 U.S. 486, 490–91, 37 S.Ct. 711, 713–14, 61 L.Ed. 1270 (1917)]), but that as used in the section here referred to it comprehends a suit to remove a cloud upon the title of a plaintiff. This is made plain both by the text and the history of the provision. Subdivision (b) of § 2410 makes it mandatory that "the complaint shall set forth with particularity the nature of the interest or lien of the United States." Plainly that stamps the action as one to remove a specific, particularly described, cloud upon the plaintiff's property. In a strictly limited type of suit to quiet title, such a particularization is never necessary. Not only does this language disclose that the words "quiet title" were used in a broad sense to cover a suit to remove a cloud on title but the legislative history of the insertion of this provision in the section demonstrates that it was intended to cover a suit of the character here before us.

. . . .

The language relating to suits to quiet title was inserted by amendment . . . [in 1942 of the predecessor statute to § 2410]. That amendment followed a report, H.R. 1191, 77th Cong. First Session, dated August 15, 1941. Another amendment then provided for was designed to include actions with respect to personal property as well as those relating to real property, but the language relating to

---

4. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct.     817, 82 L.Ed. 1188 (1938).

suits to quiet title was inserted pursuant to the recommendation of the then Attorney General of the United States [later-Justice Jackson] who noted that at that time there was "no provision whereby the owner of real estate may clear his title to such real estate *of the cloud of a Government mortgage or lien.*" (Emphasis ours.) The text of the letter which served to bring about the insertion of the language we now consider is set forth in the margin.[4] In our opinion it is clear that the waiver of immunity exists for the specific type of suit here brought, namely, one to remove a cloud on the title.

[4] H.R. 1191, 77th Cong. First Sess. August 15, 1941. Permitting The United States To Be Made Party Defendant In Certain Cases Involving Personal Property. "It should be observed in this connection that under existing law there is no provision whereby the owner of real estate may clear his title to such real estate of the cloud of a Government mortgage or lien. *Welch v. Hamilton* (S.D.Cal.) 33 F.2d 224, and *U. S. v. Turner*, (C.C.A.8) 47 F.2d 86. In many instances persons acting in good faith have purchased real estate without knowledge of the Government lien or in the belief that the lien had been extinguished. In other instances, mortgagees have foreclosed on property and have failed to join the United States. It appears that justice and fair dealing would require that a method be provided to clear real estate titles of questionable or valueless Government liens. Accordingly, I suggest that the bill be amended by inserting the phrase 'to quiet title or' between the words 'matter' and 'for the foreclosure of' in line 4 of page 2 of the bill."

However, nothing in *Coson*, nor in *Hopkins v. Walker*, the case to which the Ninth Circuit referred in the above-quoted part of its opinion, speaks to the question of whether a plaintiff, not an owner, not a person in actual or constructive possession, but rather the holder of a certificate of a Maryland tax sale which becomes void within two years of its date of issuance unless its holder commences a proceeding under Section 100(a) within those two years, may bring a

**5.** In both *Coson* and *Hopkins v. Walker*, plaintiffs alleged that they were owners of the property involved. Perhaps the fact of ownership was assumed, and was deemed by the courts which decided those cases to be a sufficient base for the assertion of a suit to quiet title.

quiet title action to remove any alleged cloud on its title.[5]

But there is an additional reason why the within cases are not quiet title actions. *Coson* illustrates the difference between a quiet title action and a foreclosure action. A quiet title action is a suit in which a plaintiff seeks a decree that some allegedly adverse interest in his property is actually defective, invalid or ineffective prior to and at the time suit is brought either because the lien was invalidly created, or has become invalid or has been satisfied. In *Coson* plaintiff alleged and the Ninth Circuit decided that the federal tax lien involved was legally defective with respect to the plaintiff's interest in the property to which the lien purported to attach. A foreclosure suit, on the other hand, is brought by a plaintiff to obtain a court decree divesting a valid but junior lien upon property in which the plaintiff has a senior interest. Priorities among valid interests are the subject of foreclosure suits; the alleged invalidity of adverse interests are the subjects of quiet title actions. *See United States v. Morrison*, 247 F.2d 285, 289 (5th Cir. 1957). Herein, the tax liens asserted by the United States are asserted to be junior to the ownership interests claimed by plaintiffs. Indeed, none of the parties herein seemingly oppose the contentions of the United States that pursuant to the applicable provisions of the Federal Tax Lien Act of 1966, 26 U.S.C. §§ 6321–6326, its liens as asserted in these cases are valid liens upon the properties. That suggests, therefore, that these cases are foreclosure actions. Further, it is to be noted that when commenced in the state courts, two of the three within cases were styled as "Bills of Complaint to *Foreclose* All Equity of Redemption." That use of the word "foreclose" is hardly dispositive. However, it is also to be noted that the applicable Maryland statutes affirmatively suggest that these actions are foreclosure

But even if that be true, that does not mean that a tax sale purchaser, even if he is "virtually a mortgagee," *see Keefauver v. Richardson*, 233 Md. 545, 550, 197 A.2d 438 (1964), may do the same.

proceedings. *See* Md.Code Ann. Art. 81, §§ 92 *et seq.* Thus, under § 92 the owner of the property sold at a tax sale is given the right to redeem it until the right of redemption has been finally foreclosed. Section 100(a) allows the purchaser at a tax sale to proceed in equity to foreclose all rights of redemption.[6] Under § 102(f), a complaint filed under Section 100(a) must set forth "a prayer that the Court pass a final decree foreclosing all rights of redemption of the defendants in and to the property." *See also Keefauver v. Richardson*, 233 Md. 545, 197 A.2d 438 (1964). Thus, the titling of these cases when commenced in state court would appear consistent with Maryland's applicable statutory provisions and with the case law, all of which indicate that these cases are not actions to quiet title since they pose no issue as to validity or invalidity of any lien.

### Judicial Sale

■ For the reasons set forth *supra*, the within cases involve foreclosure actions rather than quiet title actions. Viewed as foreclosure actions, however, they may not pass the barrier of sovereign immunity asserted by the United States unless each of the tax sales conducted on May 8, 1978, is a "judicial sale" as those two words are used in 28 U.S.C. § 2410(c). Plaintiffs contend that each of those tax sales was such a "judicial sale" because all aspects of the tax sale and of the foreclosure proceedings are, pursuant to Md.Code Ann.Art. 81, § 112, subject to final ratification by the Circuit Court of Prince George's County when that court renders its final decree. However, ratification of a sale seemingly does not make the sale a judicial sale. Thus, in *A. H. and R. S. Coal Corp. v. United States*, 461 F.Supp. 752, 755 (W.D.Pa.1978), the Court stated:

"What may accurately be denominated as a judicial sale is not very well settled" but a judicial sale must have certain basic ingredients. *City of New Castle v. Whaley's Heirs*, 102 Pa.Super. 492, 496, 157 A. 503, 504 (1931). A judicial sale is distinct

from an execution sale which may "issue by mere praecipe of the judgment creditor." *Yazoo & M.V.R.R. Co. v. City of Clarksdale*, 257 U.S. 10, 42 S.Ct. 27, 66 L.Ed. 104 (1921); *United States v. Branch Coal Corp.*, 390 F.2d 7, 9–10 (3d Cir. 1968). To be classified as a judicial sale, the sale "must be based upon an order, decree or judgment *directing* sale." *Baton Coal Co. Appeal*, 365 Pa. 519, 523, 76 A.2d 194, 196 (1950).

(emphasis in original).

In that last cited case, the prior owner of certain real and personal properties defaulted on a loan which was secured by a security interest in and a mortgage upon the several properties involved. The United States had filed a tax lien against all of the said properties. The sheriff levied on and sold all of those properties pursuant to instructions from the secured creditor. Subsequently, the Internal Revenue Service seized the properties because of the unsatisfied tax lien. The Court held that the sheriff's sale was not a "judicial sale," noting that it did "not emanate from a judgment." *Id.*

■ The requirement that a judicial sale be court-directed has also been said correctly to state Maryland Law:

Generally a prior judgment, decree, or order, entered in a judicial proceeding and directing that specific property be sold is the foundation of a judicial sale, and there can be no valid judicial sale without an order or decree directing it entered by a court having the power to decree the sale after jurisdictional requisites for such sale have been met.

13 Maryland Law Encyclopedia, *Judicial Sales*, § 2 at 420 (1961). Accordingly, in these cases, judicial sales of the properties in question have not taken place. Accordingly also, the requirements of §§ 2410(a)(2) and (c) have not been met. Thus, the United States is not barred by 28 U.S.C. § 2410(a)(2) from asserting sovereign immunity in the within foreclosure actions. That foreclosure, coupled with the

---

6. See footnote 1, *supra.*

nonapplicability of 28 U.S.C. § 2410(a)(1), entitles the United States successfully to assert sovereign immunity in these cases.

### Takings

■ In *Carlson v. United States*, 556 F.2d 489 (Ct.Cl.1977), the Court addressed the issue of whether the interposition of the defense of sovereign immunity could amount to an unconstitutional taking. In *Carlson*, plaintiffs owned land adjacent to land owned by the United States in trust for an Indian tribe. Plaintiffs and the tribe had a dispute as to title over a certain portion of the land. Plaintiffs then brought suit against the tribe seeking to quiet title and remove the cloud over the disputed land. According to plaintiffs, the tribe's claim made the land unmarketable, as they could not obtain the title insurance necessary to carry out an agreement with a developer to develop the disputed portion.

The District Court dismissed the suit on the ground that a necessary party, the United States, was not and could not be present. Although the United States had waived sovereign immunity in most quiet title actions, the waiver excepted "trust or restricted Indian lands" held by the United States. *See* 28 U.S.C. § 2409a(a). Thus, any attempt on the plaintiffs' part to obtain relief in the quiet title action ran afoul of the government's retained sovereign immunity. After the Ninth Circuit upheld the District Court's dismissal, suit in the Court of Claims followed.

In the Court of Claims, plaintiffs contended that the cloud cast upon their title by the Tribe's claim, coupled with the sovereign immunity asserted by the government, gave rise to an unconstitutional taking because the cloud which they could not judicially remove impaired the land's merchantability. The Court of Claims, in rejecting that contention, wrote:

> Plaintiffs' contention that their inability to sue the Government in order to clear their title gives rise to a taking of property, at least when viewed in light of the tribe's claim casting a cloud on their title, is simply without support in the case

law. Plaintiffs cite us no cases, for indeed there are none, which hold that the sovereign immunity of the United States, without any further action or omission by the Government or its authorized agent, creates in them a right to damages under the fifth amendment. The sovereign's refusal to be sued, by virtue of Congress' declination to alter the common law with respect to governmental immunity from legal process, 1 Blackstone, Commentaries *242, 246, can amount to no more than a limitation on remedies, and cannot extend to give rise to a taking for which the Constitution pledges just compensation. Prior to the establishment of this court, the Government was not of right amenable to suit either for specific relief or for taking damages. Enactment of the Tucker Act, 28 U.S.C. § 1491 (1970), while providing a basis for monetary relief from inverse condemnations, *United States v. Causby*, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946), did not change the sovereign's liability to process in an action for specific relief. By the same token, it did not make the Government liable in damages for the fact of this immunity. Plaintiffs' complaint on this score is only that Congress has failed to accord them an avenue of judicial relief similar to that available to them as against private individuals. Though the fact complained of is true, and regrettable, it is not a basis for fifth amendment relief, and thus plaintiffs' claim must fail.

556 F.2d at 492 (footnote omitted).

Prince George's County argues that in *Carlson* the government did no more than refuse to waive its sovereign immunity, while in the within case the government has not only not waived its immunity, but has also created tax liens without providing a practical means for their discharge when the monetary amount of the tax lien far exceeds the actual value of the property and thus, in practical effect, causes the property to be useless. However, the holding of *Carlson* appears to be that the government has not effected a taking because it has not consented to suit. That holding seems applicable in the within case

whether or not additional federal governmental action has taken place. Thus, the Court of Claims stated in *Carlson*:

> In a related contention, plaintiffs emphasize that the United States has the right, as the sovereign and as the trustee of Indian lands, to initiate suit or to intervene in order to quiet title to land in which it claims an interest. *See* 28 U.S.C. § 1345 (1970). Plaintiffs gather from this that the Government could have taken some action to prevent their quiet title suit from being dismissed, or otherwise to help them resolve the validity and extent of their title in the disputed tract. But because the Government did nothing in this regard, say plaintiffs, and stood idly by as the cloud cast upon their title refused to go away, a deprivation of their property rights was effected with the Government's blessing. We must also deny plaintiffs' allegation that these facts state a claim redressable in damages under the Constitution, for this contention is really no different from the one just disposed of. To the extent that the Government is immune from suit, it has the right to stand on that immunity, without being answerable in damages for so doing. Nothing in the law will imply a taking when the Government, otherwise immune from suit over its title to property, declines to exercise its discretionary right to place its own property interests at issue in a court of law, along with those of adverse claimants.

556 F.2d at 492–3 (footnote omitted).

Plaintiffs herein, unlike plaintiffs in *Carlson*, do have available to them various routes by which the federal tax liens in question can be discharged. *See, e.g.,* 26 U.S.C. § 6325(b)(2)(B) conferring upon the Secretary of the Treasury discretionary authority to issue a certificate of discharge of the property from a federal lien which he determines has no value, because of, for instance, the existence of prior liens. *See* also 26 U.S.C. §§ 7425(b)(2)(C) and (c) providing a procedure for discharging a federal lien by a timely filed motion to the Secretary of the Treasury or his designate twenty-five days prior to the tax sale. Plaintiffs

say that those methods are too cumbersome and expensive and that the value of the properties does not justify the use of the same. Even assuming arguendo plaintiffs said contentions to be meritorious in fact, the answer to them is contained in the following comments of Chief Judge Coffin in *Ortega Cabrera v. Municipality of Bayamon*, 562 F.2d 91, 100 (1st Cir. 1977):

> [A] long line of Supreme Court cases appears to establish that the facts of substantial economic loss and significant diminution in value alone do not establish compensable takings. Government hardly could go on if it could not execute programs that adversely affect property values without paying for every such change, *see Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 413, 43 S.Ct. 158 [159], 67 L.Ed. 322 (1922), and the Court has held, in a wide variety of settings, that governmental actions destroying recognized economic interests did not constitute takings. *See United States v. Central Eureka Mining Co.*, 357 U.S. 155, 78 S.Ct. 1097, 2 L.Ed.2d 1228 (1958) (government order to close all gold mines to eliminate competition); *United States v. Willow River Power Co.*, 324 U.S. 499, 65 S.Ct. 761, 89 L.Ed. 1101 (1945) (valuable riparian land adjacent to navigable river and below high water mark flooded); *Miller v. Schoene*, 276 U.S. 272, 48 S.Ct. 246, 72 L.Ed. 568 (1928) (ornamental red cedar trees on claimant's land cut down); *Hadacheck v. Sebastian*, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915) (legislative prohibition destroying 90 percent of value of property); *Consolidated Rock Products Co. v. Los Angeles*, 57 Cal.2d 515, 20 Cal.Rptr. 638, 370 P.2d 342, *appeal dismissed for want of substantial federal question*, 371 U.S. 36, 83 S.Ct. 145, 9 L.Ed.2d 112 (1962) (zoning ordinance destroying value of land). Although there is language in several Supreme Court decisions to the effect that the extent of the diminution of value is relevant, *see Goldblatt v. Hempstead*, 369 U.S. 590, 594, 82 S.Ct. 987 [990], 8 L.Ed.2d 130 (1962), the fact of economic loss alone does not add

up to a taking. But insofar as diminution in value is a relevant constitutional consideration, several Supreme Court decisions suggest that the focus is on the effect of the government action on the present uses of the land, the frustration of speculative economic expectations—such as plaintiffs' expectation to sell the four tracts to individuals contemplating its development as a subdivision—not being compensable. *See United States v. Grand River Dam Auth.*, 363 U.S. 229, 236, 80 S.Ct. 1134 [1138], 4 L.Ed.2d 1186 (1960); *Omnia Commercial Co. v. United States*, 261 U.S. 502, 43 S.Ct. 437, 67 L.Ed. 773 (1923).

Judge Coffin also discussed recent cases which had suggested that takings may occur when "total destruction" is involved (at 100) but concluded (at 101):

> ... Whatever else can be said about the law of takings, government action which interferes with the value of land only by making it less desirable for its present uses does not effect a taking, notwithstanding the fact that speculative future business opportunities may have been destroyed....

Plaintiffs herein have not alleged harm other than harm to future, speculative opportunities. Accordingly, under the facts of these cases, no unconstitutional takings are caused because the United States is entitled to assert the defense of sovereign immunity.

For the reasons set forth in this opinion, the motions to dismiss filed by the United States will be granted. In addition, these cases will, under the circumstances, be remanded to the Circuit Court for Prince George's County, because it is only the presence of the United States as a party defendant herein which made these cases removable from the state court in which they were instituted. *See Kasdon v. G. W. Zierden Landscaping, Inc.*, 512 F.Supp. 172, 176 n.3 and the cases cited thereat (D.Md.1981). Now that it is established that the United States is entitled to judgment in its favor, plaintiffs' claims against the other defendants may be better litigated in the Circuit Court for Prince George's County, the forum originally chosen by plaintiffs and the forum within whose geographical area the real properties in question are located.