**Clyde R. YAIST, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 214–77.**

United States Claims Court.

May 4, 1983.

Thomas M. Gittings, Jr., Washington, D.C., for plaintiff; James D. Murray, Lakeland, Fla., of counsel.

James T. Draude, Washington, D.C., with whom was Asst. Atty. Gen. Carol E. Dinkins, Washington, D.C., for defendant.

ON MOTION FOR PARTIAL SUMMARY JUDGMENT

## OPINION

SETO, Judge:

This action is derived from the original complaint brought by Clyde R. Yaist, plaintiff, against the United States, defendant, for the taking by defendant of rights to certain property of Mr. Yaist without just compensation.

This case is currently on remand from the Court of Claims [1] to determine four issues, one of which concerns the date of taking, the subject of this opinion. Plaintiff has filed a partial motion for summary judgment to determine only that issue, the date of taking.

For the reasons stated hereinafter, plaintiff's partial motion for summary judgment is granted and the date of taking is determined to be April 29, 1971.

## FACTS

The property involved in this suit is situated in the Florida Everglades. The Government's acquisition of the land, which is the focal point of this dispute, was part of the 1970 Congressional authorization for the purchase or condemnation of the remaining privately owned property within the Everglades Park.

Plaintiff, Yaist, purchased certain real property [2] from Olson Florida Realty Company in 1968. He did not record the deed until March 10, 1971. The Government purchased the same tract [3] of land from Olson Florida Realty Company in the spring of

---

1. On October 1, 1982, the Court of Claims was reorganized into two distinct courts; the Court of Appeals for the Federal Circuit and this Court, the Claims Court. The Federal Courts Improvement Act of 1982, Public L. No. 97–164, 96 Stat. 25. As of October 1, 1982, all cases pending before the Trial Division of the Court of Claims, as was the case at bar, were transferred to the Claims Court.

2. Olson Florida Realty executed an Agreement for Deed to Yaist, dated May 10, 1968, for 35 acres (tracts 42, 44 and 46), and later executed another deed, dated July 18, 1968, for 15 acres (tract 35). Both the 35 and the 15 acre plots

are located within Section 19, Township 54 South, Range 31 East, Monroe County, Florida. Moreover, both plots are within the Florida Everglades.

3. To effectuate its policy to purchase and condemn property within the Florida Everglades, the United States negotiated with Olson Florida Realty for the purchase of certain Everglade realty which was purportedly owned by Olson Realty. However, 50 acres of land was not owned by Olson Realty, but rather owned by Yaist.

1971. The title insurance company representing the Government conducted a title search on December 18, 1970. However, the closing on the purchase by the Government was on April 28, 1971. The Government conducted no further title search to cover the period between December 18th and April 28th. During this particular time period, Mr. Yaist recorded his deed. Subsequently, the Government recorded its deed on April 29, 1971.

## DISCUSSION

This court is bound by the opinion of the Court of Claims in the initial hearing of this case. *Yaist v. United States,* 656 F.2d 616 (Cl.Ct.1981); *cf. South Corp. and Seal Fleet, Inc. v. United States,* 690 F.2d 1368 (1982). Pursuant to the remand of the case by that court and plaintiff's present motion, the single issue to be decided at this time is the date of taking.[4]

In the *Yaist* opinion, the Court of Claims clearly expressed that the Government action constituted a taking of land even though the government was not responsible for any physical intrusion onto the land, but rather merely instituted a legal claim to the land. "It is the interference with the title to the land through a legally authorized assertion of ownership that constitutes the taking. *Cf. Carlson v. United States,* 214 Ct.Cl. 1, 8, 556 F.2d 489, 493 (1977)." *Yaist,* footnote 4 [5] at 621.

The legally authorized assertion of ownership by the government occurred on the date the deed was recorded, April 29, 1971. The date of recording gives constructive notice to all of the legal title held by the government. The record notice of the government's claim on the land, clearly interfered with plaintiff's title. Moreover, as the *Yaist* opinion stated, "the governmental intent to acquire and keep the property, ... is certainly present here: ... the Government announced to plaintiff (by letter) and also to the world (by filing the deed from Olson to it) that the property is its..." *Yaist* at 621. Therefore, it is clear in this court's view that the date of taking was April 29, 1971. The fact that the Government ostensibly purchased the land one day earlier, on April 28, is not as significant as the actual day the deed was filed. Moreover, no substantial argument is

---

**4.** Other issues which were remanded for trial include the identification of the precise property taken, and the amount of compensation due plaintiff. *Yaist v. United States,* 656 F.2d 616, 628 (Ct.Cl.1981).

**5.** Footnote 4 of the *Yaist* opinion in its entirety states:

This representation is supported by defendant's letter to Olson dated June 1, 1970, saying, 'If you had not agreed to convey voluntarily it would have been necessary to acquire your property by condemnation.' The record also establishes that there was Congressional authority to obtain the land either by negotiation or condemnation. In addition, the Department of the Interior sent letters to Yaist, one a form letter addressed to 'Landowner' and one specifically to Yaist, dated November 22, 1971 and May 10, 1972, alerting Yaist to expect his land to be appraised prior to acquisition by the Government.

The significance of the posting in *Bourgeois* [*v. United States,* 212 Ct.Cl. 32, 545 F.2d 727 (1976)] was that it gave notice to the plaintiff and all the world of the Government's claim of ownership. This claim, when questioned by that plaintiff in court, gave us jurisdiction over the case as one seeking just compensation for land allegedly taken. The

fact that in *Bourgeois* the Government's signs were physically posted on the land provides no ground for distinguishing the current case. The posting does not amount to the kind of physical intrusion, such as a flooding or military bombardment, that provides the basis for taking claims in other contexts. *See, e.g., Eyherabide v. United States,* 170 Ct.Cl. 598, 601, 345 F.2d 565, 567 (1965). *It seems apparent that, even in a situation in which the Government placed notices on the edge of but still within what was indisputably its own adjacent property, and those signs announced ownership of a neighbor's land lying beyond the signs, there would still be a taking under Bourgeois although there had been no physical touching of the neighbor's land. It is the interference with the title to the land through a legally authorized assertion of ownership that constitutes the taking. Cf. Carlson v. United States,* 214 Ct.Cl. 1, 8, 556 F.2d 489, 493 (1977) (the Government's failure to assert title to or interest in the land in controversy barred a taking, although a cloud on the title may well have resulted from unauthorized claims to the land by Indian wards of the Government). [Emphasis supplied.]

presented by either party to warrant a needless debate over the difference of one day. Finally, plaintiff adduces such tenuous and inchoate support for the dates of May 10, 1972, June 22, 1972, or August 18, 1972, as the date of taking, that further serious consideration of these asserted dates is unwarranted and would be a prodigal waste of this court's time. Therefore, this court finds that the relevant evidence supports April 29, 1971, as the date of taking.

### CONCLUSION

For the reasons stated in the opinion, this court concludes that plaintiff is entitled to judgment as a matter of law on the partial motion for summary judgment, and the date of taking is determined to be April 29, 1971.

IT IS SO ORDERED.