Donald E. RAULERSON,
Plaintiff-Appellant,

v.

UNITED STATES of America, Commissioner of Internal Revenue, Department of Justice, Defendants-Appellees.

No. 85-3054.

United States Court of Appeals,
Eleventh Circuit.

April 15, 1986.

Phillip E. Kuhn, J. David Pobjecky, Winter Haven, Fla., for plaintiff-appellant.

Jeffrey J. Tinley, Asst. U.S. Atty., Orlando, Fla., Glenn L. Archer, Jr., Asst. Atty. Gen., Tax Div. U.S. Dept. of Justice, Michael L. Paup, Chief, Appellate Section, Carlton D. Powell, Laurie A. Snyder, Elaine Ferris, Washington, D.C., for defendants-appellees.

Before GODBOLD, Chief Judge, KRAVITCH, Circuit Judge, and SIMPSON, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

In this action for declaratory judgment and injunctive relief, appellant sought a determination of the priority of claims against the same property by different federal agencies, and an order directing the IRS to enforce its lien. The district court granted summary judgment for the government. Concluding that the federal courts lack jurisdiction, we vacate the judgment and dismiss the appeal.

On July 9, 1981, the IRS made a 1.7 million dollar jeopardy assessment for 1980 taxes against Donald Raulerson. On July 13, the IRS issued a tax lien against Raulerson's property including real estate in Osceola County, Florida.

On August 5, 1981, Raulerson was arrested and charged with conducting a continuing criminal enterprise involving importation and distribution of marijuana. That same day, the FBI seized Raulerson's Osceola County property and initiated in rem forfeiture proceedings pursuant to 21 U.S.C. § 881(a)(6). Section 881(a)(6) authorizes forfeiture to the United States of "proceeds" or "things of value" traceable

to illegal drug sales. The government also sought forfeiture of the same property under 21 U.S.C. § 848(a) which authorizes the forfeiture of "profits" obtained from continuing criminal enterprises.

On December 14, 1981, Raulerson entered into a plea agreement whereby he pled guilty to charges that he had engaged in a continuing criminal enterprise involving importation and distribution of marijuana since a time prior to October, 1977. Raulerson specifically agreed to forfeit and waive his interest in the Osceola County property.[1]

Raulerson initiated this action seeking (1) a declaration that the IRS lien on his Osceola property has priority over all other interests and (2) an order that the IRS satisfy its jeopardy assessment by selling the Osceola County property. Raulerson's potential injury is clear: if the Osceola property is forfeited pursuant to either sections 848 or 881, the IRS's jeopardy assessment will have to be satisfied from Raulerson's other assets. *Cf. Gonzalez v. United States*, 606 F.Supp. 134, 135–36 (S.D.Fla. 1985) (termination assessment reasonable because defendant may forfeit tainted money and remain liable for taxes on the profit it represents).

The district court determined that the United States had waived its sovereign immunity to Raulerson's suit for declaratory judgment on the basis of 28 U.S.C. § 2410. Section 2410 provides that the United States may be sued in an action to quiet title to property on which the government has a lien. The district court found that Raulerson's claim was akin to an action to quiet title, and therefore the government had waived its sovereign immunity.[2] We disagree.

■ The United States, as a sovereign, may not be sued without its consent; the terms of its consent define the federal court's jurisdiction. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). Moreover, any waiver of sovereign immunity must be explicit and will be strictly construed. *Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957); *Sherwood*, 312 U.S. at 590, 61 S.Ct. at 771; *Florida Department of Business Regulation v. United States*, 768 F.2d 1248, 1253 (11th Cir.1985) (sovereign immunity waiver of Quiet Title Act strictly construed). While the instant action may be similar to a quiet title action, section 2410 waives sovereign immunity only in *actual* quiet title actions, not suits analogous to quiet title actions. Because we must construe sovereign immunity waiver narrowly, we cannot read section 2410 as applying to a suit such as Raulerson's. Raulerson's complaint is not an action to quiet title. Raulerson forfeited title to the Osceola property under either sections 881 or 848 and waived his interest in the property by the specific terms of his plea agreement. Accordingly, there is no controversy as to who has title to this property: all parties concede that this property belongs to the government.[3]

---

1. Paragraph two of the plea agreement states: The defendant Donald Raulerson agrees to waive any interest in those properties presently under seizure by the United States government, said seizure accomplished by seizure warrant, warrant *in rem*, or properties subject to forfeiture listed in Count I of the aforestated indictment.

   Count I of the indictment specifically alleged that Raulerson had used illicit proceeds to purchase the Osceola County property and that this property should be forfeited to the government pursuant to 21 U.S.C. § 848.

2. 28 U.S.C. § 2410 provides:
   (a) Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—
   (1) to quiet title to,
   (2) to foreclose a mortgage or other lien upon,
   (3) to partition,
   (4) to condemn, or
   (5) of interpleader or in the nature of interpleader with respect to,
   real or personal property on which the United States has or claims a mortgage or other lien.

3. The heart of Raulerson's complaint turns on when the various branches of the government acquired the Osceola property. Because we conclude that Raulerson's suit is barred by sov-

Indeed, the purpose of Raulerson's suit is to force one branch of the government to foreclose its lien to the detriment of another branch of the government.[4] Thus Raulerson's suit does not seek a determination of *who* owns the Osceola property. Rather he seeks a declaration that the IRS's claim has priority over the claims of the other branches of the government. Hence, this is not a quiet title action within the immunity waiver of section 2410 because there is no title in dispute. *Cf. United Sand & Gravel Contractors, Inc. v. United States,* 624 F.2d 733, 736–38 (5th Cir.1980) (although IRS may levy against funds in the hands of other federal agencies, section 2410 does not waive sovereign immunity where government owns property outright).[5] Because we conclude that this suit is barred by sovereign immunity, the federal courts lack jurisdiction to settle this dispute.

Alternatively, the United States argues that Raulerson is merely seeking an order directing the IRS to foreclose on specific property. Under I.R.C. § 6321, however, the government may levy against *all* of a delinquent taxpayer's property;[6] its power to levy is discretionary. Again,

ereign immunity, we do not reach Raulerson's argument that the IRS lien is superior to the § 848 criminal forfeiture. The crux of this argument is that the § 848 forfeiture is not operative until guilt is established. Raulerson argues that if he forfeited the Osceola property pursuant to § 848, he forfeited his interest in that property at the time of his plea. Accordingly, Raulerson contends that under § 848 he forfeited the Osceola property as encumbered by the tax lien entered several months earlier.

Alternatively, Raulerson argues that if the government claims the Osceola property through the civil forfeiture provisions of § 881, the IRS lien still has priority. Under § 881 proceeds traceable to illegal drug transactions are forfeited at the time of the offense.

Raulerson contends that an exception to the relation back doctrine of *United States v. Stowell,* 133 U.S. 1, 17, 10 S.Ct. 244, 247, 33 L.Ed. 555 (1890) (forfeiture occurs at the time of illegal act) should apply in his case. Raulerson relies on *Florida Dealers & Growers Bank v. United States,* 279 F.2d 673, 677–78 (5th Cir. 1960) (equitable considerations may redeem claims that otherwise would be vitiated by strict application of relation back doctrine) and argues that the IRS should be regarded as an innocent lienholder whose claim will be extinguished by application of the relation back doctrine. Raulerson contends that it would be inequitable to extinguish the IRS claim because the IRS levied against Raulerson's Osceola property without knowledge that the property was subject to forfeiture.

Raulerson overlooks two key points. First, no hardship will work against the IRS; it has levied, pursuant to I.R.C. § 6321, against *all* of Raulerson's property. Second, the purpose of the exception to the relation back doctrine is to protect *innocent* lienholders. An exception to the *Stowell* doctrine would redound to Raulerson's benefit, not the IRS. *Cf. Florida Dealers,* 279 F.2d at 677–78 ("remission should be based only upon a real and not a suppositious equity").

Raulerson also argues that the § 881 confiscation was not effective until forfeiture warrants were filed several weeks after the IRS's lien. Raulerson points out that the government argued this position in a companion case to determine Raulerson's state tax liability.

As we stated at the outset of this footnote, we do not decide the merits of these claims. We note, however, that Raulerson has alleged that the government has not lived up to its end of the plea bargain. Raulerson claims that he entered into the agreement upon the government's assurances that the Osceola property would be forfeited to the IRS by virtue of its prior liens. The district court did not address this claim. While Raulerson's suit regarding which branch of the government has superior title to his former property is barred, he may bring a suit in the Southern District of Florida, where his plea was entered, to enforce the specific terms of his agreement.

4. At oral argument appellant's opening statement characterized this suit as one in which Raulerson was asking the government to transfer money from one of its pockets to another of its pockets. The crux of the sovereign immunity bar here is that the United States has not consented to taxpayer suits to protect the IRS's pockets from other branches of the federal government.

5. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

6. I.R.C. § 6321 provides:
   If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

we agree with the government. Because the government, not the taxpayer nor the judiciary, decides which property is to be sold to satisfy a tax assessment, it would be anomalous to determine that the government has consented to a suit to compel the IRS to foreclose on specific property.[7]

In light of the foregoing, we conclude that the district court lacked subject matter jurisdiction. Therefore, we VACATE the district court's order and DISMISS this appeal.

Lynda Quillen, Tallahassee, Fla., for respondents-appellees.

---

7. The government also argues that this action is barred by the Declaratory Judgment Act, 28 U.S.C. § 2201. That Act proscribes judicial declaration of the "rights and legal relations of any interested parties" in disputes involving federal taxes. Cf. *Lewis v. Sandler*, 498 F.2d 395, 399 (4th Cir.1974) (Act bars relief even though legality of levy and assessment is challenged and not the validity of the tax itself). *Wilson v. Wilson*, 141 F.2d 599, 600 (4th Cir.1944) (in advance of tax assessment, Act bars suits that seek to control IRS's discharge of official duties). Rauler-

son relies on *Aqua Bar & Lounge v. United States Department of Treasury*, 539 F.2d 935, 939 (3d Cir.1976) which held that neither the Anti-Injunction Act nor the Declaratory Judgment Act barred a taxpayer suit to clear his property of a tax lien where the taxpayer did not challenge the validity of the tax assessment. Because we conclude that this action is barred by sovereign immunity, we do not decide whether the Declaratory Judgment Act bars a taxpayer suit to foreclose a tax lien.