CONTIMORTGAGE CORP., Plaintiff,

v.

UNITED STATES of America, Gunther A. Schaaf, and Sandra Ondov Schaaf, Defendants.

No. CIV. 98–1389 (DWF/AJB).

United States District Court, D. Minnesota.

March 2, 2000.

---

Steven H. Bruns, Esther E. McGinnis, Peterson Fram & Bergman, St. Paul, MN, for Plaintiff.

Daniel R. Conrad, United States Department of Justice, Ben Franklin Station, Washington, DC, for Defendant United States of America.

## MEMORANDUM OPINION AND ORDER

FRANK, District Judge.

### Introduction

Plaintiff ContiMortgage Corporation ("ContiMortgage") commenced the present suit under 28 U.S.C. § 2410(a) to determine the priority of adverse claims to certain real property in Anoka County, Minnesota. ContiMortgage seeks a declaration that its mortgage is superior to Defendant United States' previously recorded federal tax liens.

The matter is currently before the Court pursuant to the cross-motions of Conti-Mortgage and the United States for summary judgment. For the reasons stated, both motions are denied.

### Background

The following facts are not in dispute.

In 1994, the subject property was owned by Defendants Gunther Schaaf and Sandra Ondov Schaaf (the "Schaafs"). During 1994 and 1995, the Schaafs engaged in improvements on their property, including an expansion of their house and other construction on the property. The Schaafs financed the new construction by obtaining a mortgage from Mercantile Mortgage, Inc. ("Mercantile").

Mercantile hired Strategic Mortgage Services ("SMS") to conduct the title work and perform the closing of the mortgage. SMS's abstractors and title examiners performed name searches and tract searches for the subject property on February 6, 1995, April 24, 1995, and May 2, 1995.

On May 4, 1995, the IRS filed a federal tax lien in the Anoka County Recorder's Office, in the amount of $441,489.38.

On May 9, 1995, the Schaafs executed a $300,000 note in favor of Mercantile. The note was secured by a mortgage.

$168,747.72 of the $300,000.00 mortgage was paid to lien subcontractors who had worked on the subject property. $1,248.52 of the loan proceeds from Mercantile were applied to the Schaafs' outstanding real estate taxes. $65,943.46 of the loan proceeds were used to pay off a 1991 mortgage from Crosstown State Bank ("Crosstown").

On May 12, 1995, Mercantile assigned its interest in the 1995 mortgage to Plaintiff ContiMortgage.

On May 19, 1995, the mortgage was recorded in the Anoka County Recorder's Office.

In the summer of 1997, the Schaafs defaulted on their mortgage payments. Conti-Mortgage commenced mortgage foreclosure proceedings and the Schaafs failed to

redeem within the mortgage redemption period. On October 6, 1998, ContiMortgage purchased the subject property at a mortgage foreclosure sale held by the Anoka County Sheriff. The Schaafs' interest in the property terminated on April 6, 1999, when the redemption period expired.

ContiMortgage commenced the present action on May 21, 1998. ContiMortgage seeks a declaration that it is entitled to be equitably subrogated to the positions of the 1991 Crosstown mortgage and the mechanic lienholders, and that its mortgage is thus superior to the rights of the United States of America.

## Discussion

### A. Standard of Review

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir.1996). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank*, 92 F.3d at 747. However, as the Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" Fed.R.Civ.P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must then demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir.1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Krenik*, 47 F.3d at 957.

### B. Subject Matter Jurisdiction

The United States argues that ContiMortgage is not a real party in interest in this case and that subject matter jurisdiction is therefore lacking.

 Plaintiff ContiMortgage commenced this action under 28 U.S.C. § 2410(a)(1), which provides in relevant part as follows:

> Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—
>
> (1) to quiet title to,
>
> . . . .
>
> real or personal property on which the United States has or claims a mortgage or other lien.

28 U.S.C.A. § 2410(a).

The words "quiet title," as used in the section above, are not intended to refer to a suit to quiet title in the limited sense in which that term is sometimes used, but rather, the term comprehends a suit to remove a cloud upon the title of a plaintiff. *Progressive Consumers Federal Credit Union v. United States*, 79 F.3d 1228, 1231 (1st Cir.1996), citing *United States v. Coson*, 286 F.2d 453, 457 (9th Cir.1961). Where a plaintiff does not challenge the merits of the tax assessment itself, section 2410(a) has been recognized as a vehicle for determining lien priority. *Progressive Consumers*, 79 F.3d at 1233–34. Thus, in *Progressive Consumers*, where, as in the present matter, the plaintiff sought a declaration of the priority of its mortgage over the government's tax lien, the First Circuit held that subject matter jurisdic-

tion was properly exercised. *Progressive Consumers*, 79 F.3d at 1230–34.

The United States claims that ContiMortgage is not a proper party in interest because Fidelity National Title Insurance, which provided a title insurance policy in the present matter, bears the risk of loss. In support of its argument, the United States cited *Commonwealth Land Title Ins. Co. v. United States*, in which the title insurer brought an action against the United States to determine the validity of a tax lien. *Commonwealth Land Title Ins. Co. v. United States*, 759 F.Supp. 87 (D.Conn. 1991). The Court concluded that the title insurance company could not bring a claim under section 2410 because it was neither in possession of nor was the private owner of the property in question. *Commonwealth*, 759 F.Supp. at 93.

■ In the present matter, however, ContiMortgage, not a title company, is the plaintiff. ContiMortgage is the owner of the subject property and the assignee of the mortgage at issue. ContiMortgage is seeking to determine the priority position of its own mortgage. Therefore, the present matter is analogous to *Progressive Consumers*, rather than *Commonwealth*.

As the Plaintiff in the present matter is seeking a declaration of the priority of its mortgage over the United States' tax lien, subject matter jurisdiction is proper pursuant to 28 U.S.C. § 2410(a)(1). *See Progressive Consumers*, 79 F.3d at 1231.

### C. Equitable Subrogation

■ The doctrine of equitable subrogation allows a person who pays off an encumbrance to assume the same priority position as the holder of the previous encumbrance. *Mort v. United States*, 86 F.3d 890, 893 (9th Cir.1996). Although equitable subrogation (also called "legal subrogation") is a highly favored doctrine, it is not an absolute right, but rather, one that depends on the equities and attending facts and circumstances of each case. *Universal Title Ins. Co. v. United States*, 942 F.2d 1311, 1315 (8th Cir.1991). In general, the equity of the party seeking subrogation must be clear and substantial, and superior to that of other claimants. *Universal Title*, 942 F.2d at 1315. Finally, subrogation cannot be invoked where it would work an injustice, violate sound public policy, or result in harm to innocent third parties. *Universal Title*, 942 F.2d at 1315.

■ Unlike the present matter, *Universal Title* again involved a title insurer who brought an action against the government regarding a prior tax lien on the subject property. In that case, the Eighth Circuit noted that an insurer has no right of subrogation as against a third party who has not caused the insured's loss. *Universal Title*, 942 F.2d at 1319. The Eighth Circuit finally concluded that the plaintiff was not entitled to be subrogated to the rights of the prior lienholders because it made no payment that would entitle it to subrogation, its failure to discover the federal tax lien was not an excusable mistake of fact, and its subrogation rights, if any, did not apply as against the government, which was not responsible for the loss. *Universal Title*, 942 F.2d at 1320.

The present matter, however, was not commenced by a title insurer. Rather, the facts of the present matter more closely resemble the case of *Mort v. United States*, in which assignees of a promissory note secured by a deed of trust sought a declaration that their deed of trust was superior to a federal tax lien. *Mort v. United States*, 86 F.3d 890 (9th Cir.1996). As in the present matter, the plaintiffs in *Mort* acquired their interest after the IRS filed a tax lien on the property, but argued that they were entitled to be equitably subrogated to the priority position of the lender whose loan was paid off by their assignor. *Mort*, 86 F.3d at 891.

■ The Ninth Circuit stated that equitable subrogation is generally appropriate where (1) the subrogee made the payment to protect his or her own interest, (2) the

subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire encumbrance, and (5) subrogation would not work any injustice to the rights of the junior lienholder. *Mort*, 86 F.3d at 894.

■ A person who lends money to pay off an encumbrance on property and secures the loan with a deed of trust on that property is not a volunteer for purposes of equitable subrogation. *Mort*, 86 F.3d at 891. Therefore, to the extent that Mercantile loaned the Schaafs money to pay off lien subcontractors and the 1991 Crosstown mortgage, Mercantile was not a volunteer for purposes of equitable subrogation.

In the present matter, Mercantile assigned its interest to Plaintiff ContiMortgage. Similarly, in *Mort*, the plaintiff was actually an assignee of the party that had paid off the prior note. *Mort*, 86 F.3d at 894. The Ninth Circuit noted that the general rule is that, where a valid assignment of a mortgage has been consummated with proper consideration, the assignee is vested with all the powers and rights of the assignor. *Mort*, 86 F.3d at 894. The Ninth Circuit thus held that the plaintiff had assumed the assignor's rights to equitable subrogation. *Mort*, 86 F.3d at 894.

Finally, the Ninth Circuit held that application of the doctrine would not work an injustice to the rights of the government:

At the time the IRS filed its tax lien, the tax lien was subordinate to the Kern mortgage. If the Morts are equitably subrogated to the priority position of the Kern mortgage, the IRS will be in the same position it was in at the time the tax lien was filed. If equitable subrogation is denied, however, the government will receive a windfall, moving up to a better position than it originally had.

*Mort*, 86 F.3d at 895.

Similarly, in the present matter, at the time the IRS filed the tax lien, it was subordinate to the Crosstown mortgage and the rights of the lien subcontractors.[1] If ContiMortgage is equitably subrogated to the priority position of the Crosstown mortgage and lien subcontractors, the United States will be in the same position it was in at the time the tax lien was filed. If equitable subrogation is denied, however, the government will receive a windfall, moving up to a better position than it originally had, thereby reaping the benefits of the loan that Mercantile issued to pay off the Crosstown mortgage and the lien subcontractors.

■ Finally, however, for the doctrine of equitable subrogation to apply, Minnesota law requires the presence of an "excusable mistake of fact" in the failure to

1. According to the applicable federal statute, state law determines when a subcontractor's lien arises:

The term "mechanic's lienor" means any person who *under local law* has a lien on real property ... for services, labor, or materials furnished in connection with the construction or improvement of such property. For purposes of the preceding sentence, *a person has a lien on the earliest date such lien becomes valid under local law* against subsequent purchasers without actual notice, but not before he begins to furnish the services, labor, or materials.

26 U.S.C.A. § 6323(h)(2) (emphases added).

Accordingly, Minnesota law provides as follows:

All liens, as against the owner of the land, shall attach and take effect from the time the first item of material or labor is furnished upon the premises for the beginning of the improvement, and shall be preferred to any mortgage or other encumbrance not then of record, unless the lienholder had actual notice thereof. As against a bona fide purchaser, mortgagee, or encumbrancer without actual or record notice, no lien shall attach prior to the actual and visible beginning of the improvement on the ground ....

Minn.Stat. § 514.05, subd. 1.

Consequently, to the extent that material or labor was furnished and visible improvements were made on the property in question before the recording of the tax lien, the subcontractors' liens would have had priority over the federal tax lien.

learn of the prior encumbrance on the property. *Universal Title*, 942 F.2d at 1316. As stated by the Eighth Circuit, it has long been recognized that purchasers of real property are expected to consult available records in regard to contemplated real property transactions to minimize the effect of any uncertainty of representation between vendor and vendee concerning existing incumbrances of record. *Universal Title*, 942 F.2d at 1318.

In the present matter, the mortgage was obtained on May 9, 1995. On that date, the Schaafs signed an affidavit stating that there were no tax liens filed against them. (Pl.'s Ex. J.) SMS conducted title searches on February 6, 1995, April 24, 1995, and May 2, 1995. The federal tax lien was recorded on May 4, 1995. ContiMortgage asserts that no search of the available records could have discovered the lien by May 9, 1995, due to the existence of a "gap period" in the county recorder's records, meaning the time interval between the day when the county recorder received a document for recording and the time when that document has been processed and is thus discoverable in the real property records. (Pl.'s Ex. L at pp. 5–7.)

However, at his deposition, Mr. Schaaf testified that he had informed Mercantile that he was in negotiations with the IRS, specifically, that he had outstanding federal tax liabilities that he was trying to resolve. (G. Schaaf Dep. at p. 21.)

Later in his deposition, Mr. Schaaf stated that, to the best of his recollection, he did not believe he had actually spoken to anyone from Mercantile. (G. Schaaf Dep. at pp. 38–40.) Rather, Mr. Schaaf believed that he had made the statements in question to the representatives who brokered the transaction between the Schaafs and Mercantile. (G. Schaaf Dep. at pp. 38–40.)

As the matter is before the Court pursuant to the parties' cross-motions for summary judgment, neither party is entitled to have this conflict in the record construed in its favor. Therefore, an issue of fact remains whether Mercantile committed an "excusable mistake of fact" in failing to discover the existence of the federal tax lien before issuing its mortgage to the Schaafs.

### Conclusion

This case is distinguishable from the Eighth Circuit's decision in *Universal Title*. Plaintiff ContiMortgage is not a title insurer, but rather is the mortgage assignee seeking a declaration as to the priority of its mortgage. ContiMortgage is therefore a proper party in interest and the Court may exercise subject matter jurisdiction.

Under the doctrine of equitable subrogation, ContiMortgage would be allowed to assume the same priority position as the holders of the previous encumbrances, specifically Crosstown and the lien subcontractors. However, as the record contains an issue of material fact regarding whether the federal tax lien should properly have been discovered, and as the doctrine depends on the equities and attending facts and circumstances of each case, neither party is entitled to summary judgment.

It is the position of the Court that it is in the best interests of the parties to pursue a settlement at this time, in the context of the Court's decision.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. The Plaintiff's motion for an order stating that the Plaintiff is entitled to be equitably subrogated to Crosstown's mortgage and the subcontractors' liens and stating that the Plaintiff's mortgage is superior to the United States' tax liens and to dismiss the United States' counterclaims (Doc. No. 22) is **DENIED.**

2. The United States' motion for summary judgment (Doc. Nos.28, 32) is **DENIED.**