**Armando GONZALEZ, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 84–2600–Civ–Hoeveler.**

United States District Court, S.D. Florida.

Jan. 15, 1985.

Jay R. Moskowitz, Miami, Fla., for plaintiff.

Steven Kwartin, North Miami, Fla., for defendant.

### ORDER OF DISMISSAL WITHOUT PREJUDICE

HOEVELER, District Judge.

This cause came before the Court for hearing on December 14, 1984, upon the Complaint of Plaintiff Armando Gonzalez for a summary de novo review pursuant to 26 U.S.C.A. § 7429(b)(1) of a termination assessment made by the Internal Revenue Service on or about August 20, 1984.

Agents of the Internal Revenue Service personally delivered to the Plaintiff a Notice of Termination Assessment of Income Tax for the period of January 1, 1984 through July 25, 1984. A Termination Assessment under Section 6851 of the Internal Revenue Code is made for a tax year that either has not ended or for which the due date for filing a tax return has not yet passed. The Notice served upon Mr. Gonzalez assessed a tax against him in the amount of $886,841.40. The Notice from the District Director of the Internal Revenue stated that

> under the section 6851 of the I.R.C., you are notified that I have found you designing to quickly place property beyond the reach of the Government by either concealing it or dissipating it, thereby tending to prejudice or render ineffective collection of income tax for the 1984 taxable year.

Workpapers of an Internal Revenue Service agent were attached to the assessment. The papers stated that Metropolitan Dade County police officers, while executing a search warrant, found a large sum of money—$1,784,740.00—in the bedroom closet of the Plaintiff's residence. According to the agent's notes, an analysis of Plaintiff's previously filed tax returns indi-

cated that the monies found were never reported by the Plaintiff.

At the hearing of December 14, 1984 on this cause, several Metro-Dade police detectives testified about an ongoing narcotics investigation and execution of the search warrant on Plaintiff's residence on or about July 25, 1984, that led to a customs dog's alert to the $1,784,740.00 contained in large plastic garbage bags in the bedroom of Plaintiff's residence at 235 N.W. 59th Avenue in Miami, Florida. Detective Mario Biovides testified that a confidential informant had reported to the Metro-Dade police that he had observed approximately five kilograms of cocaine in the Plaintiff's residence. The Government presented a copy of the affidavit for Search Warrant as Government's Exhibit 1. The affidavit contained information supporting the informant's reliability.

Detective Juan Espinosa testified that he was present during the execution of the search warrant when the monies were found. Customs Officer John Mackolin, a "K–9" enforcement officer, testified that his customs dog alerted to the garbage bags that contained the money, indicating that the money had been near or in contact with narcotics.

The Government also presented pictures of the seized currency, Government's Exhibits 2A and 2B. Of the monies seized, there were six hundred and six one-hundred dollar bills, two thousand and seventy two fifty-dollar bills, seventy six thousand and six hundred fifty five twenty dollar bills, six thousand seven hundred and twenty one ten-dollar bills, and forty-six five-dollar bills. Detective Schumacher, also of the Metro-Dade police force and present at the execution of the search warrant, testified that the condition and packaging of the bills was similar to money used in the purchase and sale of narcotics. Detective Schumacher testified as having thirteen years of narcotics investigation experience.

The monies seized are presently the subject of a forfeiture action in Dade County State Court, *In re: Forfeiture of $1,784,-740.00 in U.S. Currency,* Case No. 84– 27674, Eleventh Judicial Circuit in and for Dade County, Florida. Thus, Plaintiff contends that the termination assessment issued by the Internal Revenue under 26 U.S.C.A. § 6851 (West Supp.1984) was not reasonable under the circumstances. Plaintiff asserts that the money is presently in the custody of the Metro-Dade police department and beyond the reach of the Plaintiff unless he prevails in that action. Plaintiff feels that the notice of termination is unnecessary because the IRS could intervene in the state forfeiture action and protect its interests. Plaintiff therefore contends that the IRS has not met its burden of proving that the assessment is reasonable under the circumstances as required by 26 U.S.C.A. § 7429(a)(1). Therefore, Plaintiff presented no evidence regarding the reasonableness of the amount of the assessment. Section 7429(a)(2) places the burden of proof with respect to the issue of reasonableness of the amount of the assessment on the taxpayer plaintiff.

The sole issue before the Court is whether the notice of termination issued to Mr. Gonzalez was reasonable under the circumstances. 26 U.S.C.A. § 7429(b)(2)(A) (West Supp.1984). *See Loretto v. United States,* 440 F.Supp. 1168, 1172 (E.D.Pa.1977). The fact that the monies are presently the subject of a forfeiture action and beyond the reach of the Plaintiff does not demand a conclusion that the notice of termination was unreasonable. In *Randahl v. United States of America,* Stand.Fed.Tax Rep. (CCH) ¶ 9356 (D.Minn. Jan. 5, 1982), the court stated:

> Plaintiff's principal argument is that it is somehow unfair for the government to be claiming that the money seized is, on one hand, subject to forfeiture, and, on the other hand, due for income taxes. Having considered this argument the court concludes that the mere presence of a forfeiture action does not change the nature of the termination assessment which is, under the circumstances, reasonable. It is not necessary that a taxpayer have an absolute and irrevocable right to retain the gains from apparent

criminal activity in order to be taxed. He may lose the tainted money and still be subject to taxes on the profit it represents.

*Id.* (citation omitted).

The testimony at the hearing indicated that the money seized may have been involved in narcotics transactions. Moreover, Plaintiff's tax returns filed by the Plaintiff for the years 1977 through 1983 revealed that Plaintiff's taxable income never exceeded $31,000.00 (Response ¶ 5), with the exception of the 1981 taxable year when the Plaintiff won $245,000.00 in the Puerto Rican lottery and filed an amended tax return reporting those winnings in December 1983.

The Court therefore finds that the making of the termination assessment, in light of the testimony and evidence presented at the hearing and the possibility that money involved in narcotics transactions would not be reported by the Plaintiff as taxable income, was reasonable under the circumstances. "Thus, the Secretary had sufficient reason to find that [Plaintiff] was 'designing quickly to place [his] property beyond the reach of the Government by either concealing it or dissipating it.'" *Loretto v. United States*, 440 F.Supp. 1168, 1174 (E.D.Pa.1977) (quoting 26 U.S.C.A. § 6851); *see Amyx v. United States*, 529 F.Supp. 98 (S.D.Ohio 1981).

Accordingly, it is hereby

ORDERED AND ADJUDGED that Plaintiff's Complaint be and is DISMISSED WITHOUT PREJUDICE to the rights of the Plaintiff to contest the asserted tax liability by way of any available remedy, including a petition in Tax Court or a suit for refund in district court or the United States Claims Court.