[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-10132

_____

D.C. Docket No. 1:14-cv-22066-KMW

BILLY CYPRESS, JOHNSON BILLIE,
ETHEL HUGGINS, BETTY CLAY,
GREG KELLY, AGNES BRADY,
EDNA TIGERTAIL, NINA BILLIE,
EVELYN CYPRESS, PRISCILLA BUSTER,
LUTHER TIGER, JAMES CLAY,
MARY KELLY, AUDREY CLAY,
HEATHER CYPRESS,

                                                    Plaintiffs-Appellants,

versus

UNITED STATES OF AMERICA,
U.S. DEPARTMENT OF INTERIOR,
U.S. DEPARTMENT OF THE TREASURY,

                                                    Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 23, 2016)

Before WILLIAM PRYOR and FAY, Circuit Judges, and ROBRENO,[*] District Judge.

PER CURIAM:

This appeal arises out of a dispute between sixteen members of the Miccosukee Tribe of Florida (the "Tribe members") and the United States, the U.S. Department of the Interior, the U.S. Department of the Treasury, and the Secretaries of the Treasury and of the Interior (collectively, "the Government"). The Tribe members seek declaratory relief to avoid paying federal income taxes on distributions, including gaming proceeds, paid out of the Tribe's trust account. The district court dismissed the complaint for lack of subject matter jurisdiction, finding that the United States had not waived sovereign immunity for suits brought by individual Tribe members. The Tribe members now appeal the dismissal.

We agree with the district court that the Government did not waive sovereign immunity. Accordingly, we affirm the district court's dismissal of this matter.

## I. BACKGROUND

Since 1990, the Miccosukee Tribe has operated gaming activities in Dade County, Florida, and the Tribe currently imposes a "7.75% assessment on gaming and other resort revenues." The proceeds of this assessment are deposited into a

---

[*] The Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

2

"tribal trust account of distributable tribal revenues," which the Tribal Government disburses "to sustain[] tribal members in their existing communities." The trust account also includes proceeds from the "fuel tax on the Tribe's fueling station" and "income from tribal leases, licenses, and enterprises on other tribal trust lands."

In 2005, the Internal Revenue Service (IRS) began investigating the Miccosukee Tribe's and its members' compliance with federal tax laws governing the treatment of tribal revenue and disbursement from tribal gaming activity.

In their Complaint, the Tribe members sought a declaratory judgment that any taxes levied on the Tribe's payments to them violate various statutory and treaty provisions that govern the Tribe's relationship with the United States. They asserted that the Miccosukee Reserved Area Act (MRAA), 16 U.S.C. § 410 note, and the Administrative Procedure Act (APA), 5 U.S.C. § 702, each contain a waiver of sovereign immunity applicable to their claims.

The Government filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), arguing that the district court lacked subject matter jurisdiction and specifically that the Tribe members failed to identify a valid waiver of sovereign immunity permitting their claims against the United States.

After a hearing, the district court granted the Government's motion. The district court determined that the Tribe members failed to "establish[] an explicit

3

waiver of sovereign immunity." The district court explained that the waiver of sovereign immunity in the Declaratory Judgment Act (DJA), 28 U.S.C. § 2201, expressly excludes tax matters. The district court also rejected the Tribe members' reliance on the MRAA, "which principally addressed the relationship between the Miccosukee Tribe's land and Everglades National Park." The district court concluded that although the MRAA authorizes claims by the Tribe against the Government, the MRAA does not unequivocally express a waiver of sovereign immunity for suits by *individual* Tribe members. The district court explained that even if the MRAA could be construed to permit suits by individual Tribe members, Plaintiffs had not shown that their claims "arise from any violation of the MRAA, which makes no reference to, provision for or mention of taxes of any kind." Finally, the district court found that the APA's waiver of sovereign immunity was inapplicable to this case.

Further, the district court denied Plaintiffs' motion to amend their complaint to include additional information about potential harm, because amendment "would not cure the fundamental defects in the Complaint."

## II. STANDARD OF REVIEW

We review *de novo* a district court's dismissal of a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013). When determining whether the

4

plaintiff has sufficiently alleged a basis for subject matter jurisdiction, we are to take the allegations in the complaint as true. *McElmurray v. Consol. Gov't of Augusta–Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).

We review the district court's refusal to grant leave to amend a pleading for abuse of discretion, but we exercise *de novo* review as to the underlying legal conclusion that amending the complaint would be futile. *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1336 (11th Cir. 2010).

### III. DISCUSSION

The district court correctly dismissed this case for lack of subject matter jurisdiction because the Tribe members did not identify a waiver of sovereign immunity applicable to their claims in this case. By its plain language, the waiver of sovereign immunity in the MRAA extends only to actions brought by the Miccosukee Tribe itself, not individual Tribe members. Further, the APA is not an independent source for judicial review as to the claims in this case.

By way of background, while an Indian tribe is "not a taxable entity" and tribal income is generally exempt from federal income tax statutes, it is well settled that an Indian generally is subject to the same income tax and employment tax obligations as any other United States citizen unless a treaty, federal statute, or other law provides otherwise, regardless of whether the Indian is a tribal council member or officer. Rev. Rul. 67-284, 1967-2 C.B. 55; *see also Squire v.*

5

*Capoeman*, 351 U.S. 1, 6 (1956) ("[I]n ordinary affairs of life, not governed by treaties or remedial legislation, [Indians] are subject to the payment of income taxes as are other citizens.").

It is also well settled that the United States, as a sovereign entity, is immune from suit unless it consents to be sued. *United States v. Dalm*, 494 U.S. 596, 608 (1990). Where the United States consents to be sued, "the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Id.* (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)). A waiver of sovereign immunity by the United States "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4 (1969). Further, the terms "upon which the Government consents to be sued must be strictly observed." *Soriano v. United States*, 352 U.S. 270, 276 (1957). In construing a waiver of sovereign immunity, courts "must be careful not to interpret it in a manner that would 'extend the waiver beyond that which Congress intended.'" *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983) (quoting *United States v. Kubrick*, 444 U.S. 111, 118 (1979)).

The primary jurisdictional statute governing judicial review of federal tax decisions is 28 U.S.C. § 1346(a). *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1188 (11th Cir. 2011). This subsection provides, in pertinent part:

> The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:

> (1) [a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws[.]

28 U.S.C. § 1346(a).

Congress, however, has expressly excluded from judicial review certain types of federal tax disputes. *See Christian Coal.*, 662 F.3d at 1188–89. Two statutes circumscribing judicial review are the Anti-Injunction Act (AIA) and DJA. The AIA provides that, except for a few enumerated statutory exceptions, "[n]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). Similarly, the DJA, which generally authorizes courts to issue declaratory judgments as a remedy, excludes federal tax matters from its remedial scheme. *Christian Coal.*, 662 F.3d at 1188–89 (citing *Raulerson v. United States*, 786 F.2d 1090, 1093 n.7 (11th Cir. 1986)).

The Tribe members claim on appeal that the MRAA and the APA gave the district court jurisdiction over their claims. We consider each of these statutory schemes in turn and find that neither contains a waiver of sovereign immunity extending to the claims in this case.

7

A.    *The MRAA*

First, the Tribe Members claim that the MRAA contains a waiver of sovereign immunity that affords the district court subject matter jurisdiction in this case. The Miccosukee Tribe of Indians of Florida is a federally recognized Indian Tribe. The Tribe previously resided within what is now the Everglades National Park pursuant to a special use permit from the National Park Service. In 1998, Congress enacted the MRAA "[t]o replace the special use permit with a legal framework under which the Tribe c[ould] live permanently and govern the Tribe's own affairs in a modern community within the Park." Pub. L. No. 105-313, § 3(1), 112 Stat. 2964, 2965 (1998). The MRAA provides that the Miccosukee Reserved Area is to be considered Indian country and treated as a federally recognized Indian reservation. §§ 5(a)(3), 5(c), 112 Stat. at 2966. Section 5 of the Act, regarding Tribal rights and authority on the Miccosukee Reserved Area, provides that the Tribe shall "make laws and apply those laws in the [Miccosukee Reserved Area] as though the [Miccosukee Reserved Area] were a Federal Indian Reservation." § 5(a)(3), 112 Stat. at 2966. To aid in its enforcement, the MRAA contains an express waiver of sovereign immunity by the United States. It provides that "*[t]he Tribe* may bring a civil action in the United States district court for the district in which the [Miccosukee Reserved Area] is located to enjoin the United

8

States from violating any provision of this Act." § 8(i)(2), 112 Stat. at 2973 (emphasis added).

The Tribe members maintain that when the United States waived sovereign immunity for claims brought by "the Tribe" to enforce the MRAA, it also waived sovereign immunity for claims brought by individual members of the Tribe. This argument presents a question of statutory interpretation, which is answered by the plain language of the statute.

We begin any statutory interpretation analysis with the statute's text. *United States v. Chafin*, 808 F.3d 1263, 1270 (11th Cir. 2015). Where the statutory language is clear and unambiguous, we "presume that Congress said what it meant and meant what it said." *United States v. Browne*, 505 F.3d 1229, 1250 (11th Cir. 2007) (quoting *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc)). In such circumstances, our inquiry is complete. *Chafin*, 808 F.3d at 1270.

Here, the MRAA defines "Tribe" as "the Miccosukee Tribe of Indians of Florida, a tribe of American Indians recognized by the United State and organized under section 16 of the Act of June 18, 1934 (48 Stat. 987; 25 U.S.C. 476), and recognized by the State of Florida pursuant to chapter 285, Florida Statutes." § 4(10), 112 Stat. at 2966. Therefore, by its plain language, the MRAA's definition of "Tribe" does not include individual tribal members.

9

Of course, "because the 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context,'" the Court will "read them 'in their context and with a view to their place in the overall statutory scheme.'" *Chafin*, 808 F.3d at 1271 (quoting *King v. Burwell*, 135 S. Ct. 2480, 2489 (2015)). But even considering the context of the term "Tribe" in the overall statutory scheme does not aid the Tribe members' argument.

Several references to "the Tribe and its members" exist elsewhere in the MRAA, but not in the provision authorizing suit against the United States. For example, the Act provides that the Miccosukee Reserved Area should be treated "as a federally recognized Indian reservation solely for purposes of . . . the eligibility of the *Tribe and its members* for any Federal health, education, employment, economic assistance, revenue sharing, or social welfare programs or any other similar federal program for which Indians are eligible . . . ." § 5(c)(2)(B), 112 Stat. at 2966 (emphasis added). Another provision states that "[n]othing in this Act shall authorize the *Tribe or members or agents of the Tribe* to interfere with any Federal employee, agent, officer, or official in the performance of official duties." § 8(b)(2), 112 Stat. at 2971 (emphasis added). A third provision says that "[i]n the event the Secretary exercises the authority granted the Secretary under paragraph (2), the United States shall be liable to the *Tribe or the members* of the

Tribe" for certain relocation costs and losses. § 8(e)(3), 112 Stat. at 2972 (emphasis added).

Two conclusions can be drawn from these three separate provisions of the MRAA referencing both "the Tribe" and "its members." First, Congress's use of the "Tribe" and "its members" in other MRAA provisions indicates that Congress could have expressly provided a right of action against the United States by both "the Tribe" and "its members" in the waiver of sovereign immunity if it so chose. *See, e.g.*, *Loughrin v. United States*, 134 S. Ct. 2384, 2390 (2014) ("We have often noted that when 'Congress includes particular language in one section of a statute but omits it in another' . . . this Court 'presume[s]' that Congress intended a difference in meaning." (second alteration in original) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))). Second, Congress's references to both "the Tribe" and "its members" in the disjunctive ("or") indicates that the two are distinct units. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise."); *United States v. Cruz*, 805 F.2d 1464, 1472 (11th Cir. 1986) (finding that separating terms "by the disjunctive word 'or[]' strongly indicat[es] that Congress construed the two to be separate and distinct").

11

In the end, "[s]tatutory language is ambiguous if it is susceptible to more than one reasonable interpretation." *Chafin*, 808 F.3d at 1271 (alteration in original) (quoting *Med. Transp. Mgmt. v. Comm'r*, 506 F.3d 1364, 1368 (11th Cir. 2007)). Here, the Government waived its sovereign immunity only with respect to suits brought by the "Tribe." This term is not susceptible to more than one reasonable interpretation, so it is unambiguous. The Government did not waive its sovereign immunity in the MRAA as to claims brought by individual Tribe members.

The Tribe members contend that this plain language approach is incorrect because "treaties, statutes and agreements must be interpreted as the Indians understood them." In support of their argument, the Tribe members explain that "Miccosukee" literally means "us" or "me" in their native language, and therefore they believe that "rights accorded to the 'Tribe' conferred individual rights on the Plaintiffs, as well as the Tribe." However, the rule of construction favoring the Indians' interpretation applies only where the statutory or treaty language is ambiguous. *See Miccosukee Tribe of Indians of Fla. v. U.S. Army Corps of Eng'rs*, 619 F.3d 1289, 1303 n.22 (11th Cir. 2010) ("We also reject the Tribe's request for us to apply the rule of construction that ambiguous statutes must be read in the Indians' favor because the Omnibus Act is an unambiguous statute.").

12

Likewise, the Tribe members ask us to consider another statutory scheme, the 1997 Miccosukee Settlement Act (the "1997 Act"), 25 U.S.C. §§ 1750–1750e, *in pari materia* with the MRAA. They claim that the district court improperly overlooked the 1997 Act, which was enacted contemporaneously with the MRAA and concerned certain land to be held in trust by the United States for the use and benefit of the Miccosukee Tribe after the Tribe lost land in a transfer to the Florida Department of Transportation. *See* 25 U.S.C. § 1750 (listing congressional findings spawning the 1997 Act). However, we need not employ the *in pari materia* doctrine here, because we have concluded that the MRAA's waiver of sovereign immunity is unambiguous. *See Ala. Educ. Ass'n v. State Superintendent of Educ.*, 746 F.3d 1135, 1158 (11th Cir. 2014) (explaining that "[c]ourts generally turn to an *in pari materia* analysis to resolve a statutory ambiguity and to ascertain legislative intent").

And, finally, the Tribe members point to *McClanahan v. State Tax Commission of Arizona*, 411 U.S. 164 (1973), for the proposition that "when Congress has legislated on Indian matters, it has, most often, dealt with the tribes as collective entities. But those entities are, after all, composed of individual Indians, and the legislation confers individual rights." *Id.* at 181. This general principle is inapplicable where Congress has made plain that the waiver of sovereign immunity in the MRAA does not encompass claims by individual Tribe

13

members. Reading the MRAA's waiver to confer individual rights to tribe members would thereby "extend the waiver beyond that which Congress intended." *Block*, 461 U.S. at 287 (quoting *Kubrick*, 444 U.S. at 118).

B.    *The APA*

The Tribe members proffer a second source of waiver of sovereign immunity: the APA. Section 702 of the APA states that "[a] person suffering legal wrong because of agency action" may bring an action against the United States if the person seeks "relief other than money damages." 5 U.S.C. § 702. The Supreme Court has stated that this statute "waives the Government's immunity from actions seeking relief 'other than money damages.'" *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260–61 (1999). However, § 701 of the APA states that the APA "applies, according to the provisions thereof, except to the extent that statutes preclude judicial review." 5 U.S.C. § 701(a)(1). And § 702 itself provides that "[n]othing herein . . . affects other limitations on judicial review." *Id.* § 702. Because the AIA, 26 U.S.C. § 7421(a), and the DJA, *see Christian Coal.*, 662 F.3d at 1188–89, precluded the district court from exercising jurisdiction over the Tribe members' suit, the APA cannot provide a cause of action in this case. *See Fostvedt v. United States*, 978 F.2d 1201, 1203–04 (10th Cir. 1992) (finding that "[section] 702 of the APA does not override the limitations of the Anti–Injunction Act and the Declaratory Judgment Act"); *Hughes v. United States*, 953 F.2d 531,

14

537 (9th Cir. 1992) ("Even if the Anti-Injunction Act is not a grant of consent to suit under clause 2 of the exception to § 702, however, it still is an 'other limitation on judicial review,' under clause 1 of the exception. The Anti-Injunction Act is therefore a jurisdictional bar."); *Smith v. Booth*, 823 F.2d 94, 97 (5th Cir. 1987) ("[W]e find that section 702 does not aid the plaintiffs because the Anti-Injunction Act and the Declaratory Judgment Act bar judicial review of plaintiffs' claims.").

## IV. CONCLUSION

Because we find that the district court properly dismissed this action for lack of subject matter jurisdiction, we need not reach the Tribe members' other arguments concerning the Tax Anti-Injunction Act, I.R.C. § 7421(a), and the tax exception to the DJA, 28 U.S.C. § 2201(a). We also need not consider their argument that the district court should have permitted them to amend their complaint, because amendment could not have cured the jurisdictional deficiencies. Accordingly, we **AFFIRM** the decision of the district court.

15